## McCARTHY v. BARRETT.

(Supreme Court, Appellate Division, Second Department. May 19, 1911.)

1. MALICIOUS PROSECUTION (§ 20*)—ACTIONS—DEFENSES.
   One is not liable for malicious prosecution when the facts known to the prosecutor and discoverable with reasonable care were such as would lead a man of ordinary prudence to believe that a crime had been committed by the person against whom the prosecution was begun.

   [Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. §§ 26–28; Dec. Dig. § 20.*]

2. MALICIOUS PROSECUTION (§ 71*) — CONCLUSIONS — QUESTION FOR JURY — PROBABLE CAUSE.
   Where there is no material conflict in the evidence at the trial of an action for malicious prosecution, there arises a preliminary question for decision by the court as to whether defendant had such probable cause to institute the prosecution as would justify an inference by the jury that defendant had not acted with ordinary prudence.

   [Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. §§ 160–167; Dec. Dig. § 71.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. MALICIOUS PROSECUTION (§ 56*) — ACTIONS — PROSECUTION — BURDEN OF PROOF.**

In an action for malicious prosecution, the burden of proving the preliminary question as to the defendant's want of probable cause is on the plaintiff; and where it is possible to draw two inferences both of equal weight, one in favor of defendant's conduct and one against it, the plaintiff fails to sustain the burden of proof.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. §§ 112–116; Dec. Dig. § 56.*]

**4. MALICIOUS PROSECUTION (§ 64*)—ACTIONS—EVIDENCE—SUFFICIENCY—PROBABLE CAUSE.**

Evidence in an action for malicious prosecution *held* not to show that defendant was without probable cause in instituting the prosecution.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. §§ 151–153; Dec. Dig. § 64.*]

**5. MALICIOUS PROSECUTION (§ 8*)—PROBABLE CAUSE—CRIMINAL PROSECUTION —CONTROL BY PROSECUTING OFFICER.**

Where defendant upon probable cause began a criminal prosecution in which the people were represented by the district attorney, and in which defendant was not shown to have control of the proceedings, and in which the plaintiff, defendant therein, was discharged for want of evidence, defendant is not liable for malicious prosecution for failing to voluntarily discontinue the prosecution.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. § 8; Dec. Dig. § 8.*]

Appeal from Trial Term, Queens County.

Action by Thomas C. McCarthy against William M. Barrett, as president of the Adams Express Company. From a judgment for plaintiff, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, THOMAS, and CARR, JJ.

William D. Guthrie (Edward V. Conwell, on the brief), for appellant.

Isidor Wels (Clark B. Augustine, on the brief), for respondent.

CARR, J. The defendant appeals from a judgment against him, entered upon a verdict of a jury in an action tried in the Supreme Court in Kings county, brought to recover damages for an alleged malicious prosecution. An order of the trial court denying a motion for a new trial is likewise brought up for review. This action was here before, and a judgment in favor of the plaintiff was reversed by this court because of error in the charge of the trial court. McCarthy v. Weir, 113 App. Div. 435, 99 N. Y. Supp. 372. The action was brought originally for both a false imprisonment and a malicious prosecution, but at the last trial the cause of action for a false imprisonment was eliminated, and the questions now involved relate wholly to a malicious prosecution. The appellant contends that the plaintiff failed to make out a cause of action for a malicious prosecution, and that his complaint should have been dismissed. The rules of law applicable to actions of this character are well settled.

[1] First among them is that which declares that no one shall be held liable for damages for an alleged malicious prosecution when the

facts known to the prosecutor, and discoverable with reasonable care, were such as would lead a man of ordinary prudence to believe that a crime had been committed by the person against whom the prosecution was begun. Fagnan v. Knox, 66 N. Y. 525; Burt v. Smith, 181 N. Y. 1, 73 N. E. 495; Rawson v. Leggett, 184 N. Y. 504, 77 N. E. 662; Francis v. Tilyou, 26 App. Div. 340, 49 N. Y. Supp. 799; Giorgio v. Batterman, 134 App. Div. 139, 118 N. Y. Supp. 828.

[2] Another rule, well established, in this state at least, is that there always arises upon the proofs at the trial a preliminary question for decision by the trial court as to the existence of the presence or absence of probable cause on the part of the defendant in instituting the prosecution. Where there is no material conflict in the evidence as to the circumstances under which the prosecution was begun, it is the duty of the trial court to determine first of all whether such circumstances would permit, justifiably, an inference by the jury that the defendant had not acted with ordinary prudence. This preliminary question is spoken of generally in our books as "a question of law." Strictly speaking, this preliminary question is not a question of law, but one of fact. It involves a determination as to a compliance with a standard of conduct imputed by law to the hypothetical "man of ordinary prudence," but which standard is nowhere defined by law. In its true sense of relation it is apparently a pure question of fact, determinable primarily by the court by a rule of judicial policy, rather than by the inherent nature of the question itself. Thayer's Preliminary Treatise on Evidence, pp. 221–232. In any event, the decision of this preliminary question is for the court alone. It is contended that the trial court erred in submitting the question of probable cause to the jury under the facts shown at the trial. The consideration of this point requires a brief review of the evidence.

The defendant's unincorporated association was engaged in a large express business in the city of New York and elsewhere. As a part of such business, it had a depot in the city of New York near the Grand Central depot. The plaintiff had been employed by the association in its depot as a porter for several years. The association kept in this place a large box, not overwell secured, in which were placed packages of jewelry which had been received by it for transmission and delivery. This box was broken into on the night of June 16, 1901, and its contents were stolen. The theft was discovered early the next morning, and the matter was put in the hands of the police. Suspicion arose at once that the theft was the work of employés of the association. The defendant's superintendent, Vogel, accompanied some of the police officers in their attempts to trace the stolen property, some of which was found very shortly in various pawnshops. The plaintiff had left his place of employment on the night of the theft, assigning as a reason that he was too ill to work, and was going to his home. On the next morning Vogel went to his home to inquire about him, but did not find him at home, and was informed that he, McCarthy, had gone to Brooklyn. A watch was set upon the plaintiff's house, and he did not return thereto until quite late in the night. When he did return, he was taken into custody by the police on sus-

picion. He denied any knowledge of or participation in the theft. In the meantime a police detective, Farley, had undertaken an investigation independently into the circumstances of the theft. He took into custody two employés of the defendant's association, named, respectively, Brown and Pentecost. Farley claimed that Pentecost had confessed to him that he, Pentecost, in connection with others, had stolen the jewelry, and that McCarthy had been a party to the theft, and had possession of a considerable part of the stolen property. Farley communicated this information to Vogel, who thereupon signed a complaint in the Magistrate's Court, beginning criminal proceedings against McCarthy. This complaint, which charged McCarthy with a crime, was made upon information and belief, and the source of the information was stated to be the declarations of Farley, the detective, as to the alleged confession of Pentecost. There is no dispute in the proofs that Farley did so inform Vogel, and there is testimony from Farley that Pentecost did so confess to him and incriminate McCarthy. As to all of these circumstances there was no dispute in the testimony taken at the trial of this action. Vogel was dead at the time of the trial, and no testimony from him was available. His written complaint at the Magistrate's Court was produced, and the testimony of Farley and other police officers was used to supplement it.

[3] Thus the question before the trial court for preliminary decision was whether Vogel's conduct in starting the criminal proceeding against McCarthy under the circumstances above outlined was not in accordance with the standard of conduct to be imputed to a man of ordinary prudence. The burden of proof on this question was upon the plaintiff. If it were possible to draw two inferences, both of equal weight, one in favor of Vogel's conduct and one against it, then the plaintiff failed in his proofs, and his complaint should have been dismissed. It seems to us that the case at bar is very like that which was before this court in Francis v. Tilyou ut supra. There a defendant had been informed by his watchman that the plaintiff had attempted to break into the defendant's bathhouses, and, relying upon such information, he started a criminal prosecution. It was held that the defendant had the right to rely upon the information from his watchman, and his act was not without probable cause, as the law views it. It seems to us that it would be a quite extraordinary result if one cannot be allowed to rely upon such information as Farley gave to the defendant's superintendent Vogel, without subjecting oneself to pecuniary risk. If, so, then it will become quite difficult to secure a prosecutor, and the administration of the criminal law will be all the more difficult. It is this very consideration which underlies the policy of the law in making the preliminary question of probable cause one for the decision of the court itself.

[4] We think, therefore, that, under the undisputed proofs in this case, the plaintiff has not shown a lack of probable cause on Vogel's part in making the complaint in the Magistrate's Court.

[5] It is argued, however, by the respondent that, assuming the defendant had probable cause to make the complaint, it should have thereafter discontinued voluntarily the proceeding, and failing to do

so, it became liable for a malicious prosecution. It appears that, after the proceeding was begun, the examination provided by statute was adjourned from time to time to enable proofs to be offered against the then defendant McCarthy. The district attorney's office appeared to represent the people, but this defendant's association likewise appeared to aid in the prosecution by counsel and otherwise. A practical difficulty confronted the prosecution. Farley's evidence as to Pentecost's confession was not admissible against McCarthy in the examination. The prosecution was obliged, therefore, either to produce Pentecost's evidence in support of the alleged confession, or to produce other and independent evidence of crime against McCarthy. Pentecost apparently withdrew or denied his alleged confession, and no evidence was found or existed upon which the magistrate could hold McCarthy, and hence in the end the proceedings against him were dismissed. It does not appear that the defendant's association had any control over the criminal proceedings after the district attorney appeared for the people. The presumption is rather the other way.

It is no doubt regrettable that McCarthy should have been the subject of the prosecution, assuming his innocence as we are bound to do, but nothing connected with the prosecution on the proofs before us shows any lack of probable cause on the part of the defendant's association.

The judgment and order should be reversed and a new trial granted, costs to abide the event. All concur.