**LANCASTER & LOVE, Inc., Appellant,**

v.

**MUELLER COMPANY et al., Appellees.**

**No. 15355.**

Court of Civil Appeals of Texas.

Dallas.

Feb. 14, 1958.

Rehearing Denied March 7, 1958.

**660**

Wm. Andress, Jr., Dallas, for appellant.

Locke, Locke & Purnell, Stanley E. Neely, Leachman, Gardere, Akin & Porter, George Richard Edwards, R. T. Bailey and George G. Walker, Dallas, for appellees.

YOUNG, Justice.

Appellant's tort action in trial court was twofold—for malicious prosecution and "meddlesome interference"; defendants (The Mueller Company, an Illinois corporation with Texas office in Harris County, United States Pipe & Foundry Company, a foreign corporation having an office in Dallas County, and Ellis, Smith & Company, a copartnership, also of Dallas County) invoking provisions of Rule 166–A, Texas Rules of Civil Procedure (Summary Judgment). Upon hearing of motions, same were sustained with judgment that plaintiff take nothing, followed by this appeal.

Plaintiff's trial petition (first amended original) was not sworn to, nor were the motions of defendants for judgment, save that of United States Pipe & Foundry Company, which had in support the affidavit of its Dallas agent, T. W. Hanlon, Jr. These motions for summary judgment severally assert that the petition of plaintiff raises no genuine issues of any material fact; in other words, that the allegations of fact contained therein, taken as true, state no cause of action against movants. Plaintiff or appellant will be sometimes referred to as "Lancaster" and The Mueller Company as "Mueller."

Lancaster's claim for damages centers upon (1) the filing of involuntary bankruptcy proceedings against it by Mueller in the Eastern District of Arkansas at Little Rock on or about March 12, 1953 (later joined in by the other defendants); and (2) the furnishing by defendants' attorney to third parties of a letter written by plaintiff's attorney on March 4, 1953 addressed to Weber & Weber, the general attorneys for said Mueller. In view of the attack made upon plaintiff's pleading as not stating a cause of action, a rather extensive summary of Lancaster's pleading is required. These allegations are in substance:

That prior to March 4, 1953 defendants were creditors of plaintiff for merchandise and services sold and rendered on orders placed by plaintiff with them in the State of Texas. Also prior to such date plaintiff had contracted with the City of Pine Bluff, Arkansas, for construction of a sewer system, and upon completion of the work had instituted litigation in the United States District Court for the Eastern District of Arkansas for recovery of balance owing under said contract and damages incident to alleged breach thereof in amount exceeding $900,000.

That immediately prior to said March date, 1953, Mueller had recovered a judgment against plaintiff at Pine Bluff for approximately $3,407.26; one John Harris Jones, Mueller's attorney, making a threat to Jay W. Dickey, attorney for plaintiff in the pending litigation against the City of Pine Bluff, that he intended to institute involuntary bankruptcy proceedings against

plaintiff in the Federal Court of Arkansas based on an assignment from Lancaster to Mercantile National Bank of Dallas, which the latter had filed with the City of Pine Bluff. Here we quote from appellant's petition: "Thereupon the undersigned attorney for plaintiff on 4 March 1953 notified Weber & Weber, general attorneys for The Mueller Company, of which firm of attorneys Albert G. Weber, Jr., is President, Treasurer, and Chairman of the Board of the Defendant, The Mueller Company, that the purported voidable preference created by virtue of the assignment from plaintiff to Mercantile National Bank at Dallas was merely in confirmation of a prior assignment and mortgage given to said Bank more than two years prior to the date of the letter, and that there was no new security given by reason of the assignment, and that the domicile of plaintiff was in Texas, and the filing of a petition in bankruptcy would be prejudicial to recovery against the City of Pine Bluff which would subject The Mueller Company to damages and for which the plaintiff would expect to hold it responsible. Notice is given to defendants to produce the original of said letter of 4 March 1953 or secondary evidence will be used on any hearing in this matter to prove its contents."

That thereafter Mueller, without availing itself of the means tendered to it of ascertaining the truth of its allegations of grounds of bankruptcy and without probable cause, filed case No. 5129, a petition in bankruptcy in Federal Court for the Eastern District of Arkansas (Western Division); also another petition in bankruptcy in case No. 4364, United States District Court, Northern District of Texas, Dallas Division; in each instance alleging as an act of bankruptcy the making of a preferential transfer while insolvent by making an assignment to Merchantile National Bank of Dallas on November 18, 1952.

That upon the then filing by Lancaster of affidavit of more than twelve creditors, Mueller's attorney, the said John Harris Jones, wrote a circular letter to plaintiff's named creditors, inclusive of the other defendants, soliciting their joinder to the petition for bankruptcy pending in the Arkansas court, and advising that they purposed requesting that the entire action be transferred to Little Rock, Arkansas; the same letter notifying all creditors of the bankruptcy petition pending in Dallas. The other defendants then "concerted and conspired" with Mueller by electing to join in the Arkansas proceedings of bankruptcy; upon motion of Mueller, the Dallas case being transferred to and consolidated therewith by court order.

That thereafter the United States Court of Appeals for the Eighth Circuit held the aforesaid Mercantile Bank assignment not to be a voidable preference and that plaintiff was not a bankrupt in the case of Lancaster & Love, Inc., v. Mueller Company, 214 F.2d 353; the Federal District Court for the Eastern District of Arkansas then entering an order dismissing the petition of Mueller, United States Pipe & Foundry Company, and Ellis, Smith & Company. And that by virtue of the foregoing, the United States Circuit Court of Appeals having determined that no ground of bankruptcy existed, defendants herein have become liable to plaintiff for the malicious prosecution instituted by them against it without probable cause "and with a willful disregard of the true facts and the rights of this plaintiff."

Here it should be noted that in a following paragraph, plaintiff had alleged that in the Little Rock bankruptcy proceedings it had been adjudged a bankrupt by the Referee in Bankruptcy, which finding was subsequently affirmed by the District Court for the Eastern District of Arkansas *.

---

* Said Circuit Court of Appeals held the two assignments the same in substance; the second assignment amounting to no more than extension of security lawfully given to a creditor, not creating a voidable preference or constituting an act of bankruptcy.

Grounds of "meddlesome interference" are reflected in paragraph 11, plaintiff's petition, as follows: "In addition to the foregoing, the said defendants, conspiring together as above set forth in acting through their attorney of record, John Harris Jones, gratuitously and voluntarily furnished a copy of the undersigned attorney's letter of 4 March 1953 addressed to Weber & Weber to counsel defending the City of Pine Bluff in the litigation then pending between plaintiff and the City of Pine Bluff, to the law firm of House, Moses & Homes, of Little Rock, Arkansas, who then furnished the same to the Special Master theretofore appointed by the United States District Court for the hearing of said cause as an argument for making Mercantile National Bank at Dallas a necessary party to the litigation between plaintiff and the City of Pine Bluff, by reason of which fact the determination of such question was delayed for a period of more than 60 days, and the setting of the beginning of the submission of evidence to the Special Master theretofore made for May 1953 had to be postponed pending determination of the question until 21 September 1953, to the plaintiff's damage in the sum of $15,000, interest on the money involved for the delay occasioned solely because of the action of the defendants in furnishing said letter to counsel for the City of Pine Bluff."

Appellant's points on appeal are quoted: (1) "An erroneous legal ruling, not affecting the facts, reversed upon appeal, is not conclusive proof of the existence of probable cause as an absolute defense to malicious prosecution for filing involuntary bankruptcy proceedings, when the instigator of the bankruptcy proceedings refused to investigate the existence and truth of such facts upon offer and warning from the bankruptcy defendant, and such facts were held as a matter of law not to constitute grounds for bankruptcy." (2) "A person who voluntarily intermeddles in litigation in which he is not a party and in which he has no interest, for the bene-fit of one litigant and the detriment of the other, is liable for damages caused to the victim of his officious interference."

Counterpoints of appellees are to effect that (1) a finding in favor of a petitioner in involuntary bankruptcy proceeding is conclusive evidence that the petitioner had probable cause for instituting said proceedings, although said finding is reversed upon appeal; and (2) the trial court correctly ruled that plaintiff's pleading in the trial court did not raise an issue or state a cause of action for meddlesome interference.

■ The parties of course agree that an essential element of an action for malicious prosecution is the institution of a suit without probable cause. "Thus the defendant is not liable though there was no probable cause if he was not actuated by malice, or though he was actuated by malice, if he had probable cause." 28 Tex. Jur., p. 462.

Reference is again made to appellant's admission in pleading and brief that it had been adjudged a bankrupt by both the Referee and the Federal District Court in appellees' Arkansas proceeding for involuntary bankruptcy (later reversed by Circuit Court); and appellant does not claim that these first two adjudications were procured by improper methods, such as fraud or perjury. In the situation thus presented it is the general rule that a court finding in favor of plaintiff in the original action is conclusive evidence that said plaintiff had probable cause for instituting such action.

Annotations to 14 A.L.R.2d 320, headed "Malicious Prosecution-Probable Cause", state: "Where the complaint in an action for malicious prosecution shows on its face facts indicating a prima facie presumption of probable cause, such as the fact that a judgment or order, although subsequently reversed or set aside, was rendered against plaintiff in a civil action or proceeding in which he was a defend-

ant, a mere allegation of want of probable cause is insufficient, *it being incumbent on him to impeach such judgment by allegations that it was the result of fraud or other improper practices.*" (Emphasis ours.) In 34 Am.Jur., same title, p. 739, it is said: " § 57. Recovery in Civil Proceeding.—In an action for the malicious prosecution of a civil suit, the same questions involved in an action for a malicious criminal prosecution arise, and the state of the authorities appears to be the same. Manifestly, if the proceedings terminated adversely to the plaintiff and judgment passed against him, there was reasonable and probable cause for their institution— they were well instituted because they succeeded, and the result is conclusive and cannot be reviewed in the second action. Even though the judgment is subsequently set aside, and the final trial results in favor of the party now plaintiff, the recovery in the first instance has been held conclusive on the question of the presence of probable cause; but in others, it is held that the judgment may be impeached by proof that it was obtained by fraud or perjury." Restatement of the Law of Torts, as adopted by the American Law Institute, states in Vol. III, page 447, under the title "Wrongful Civil Proceedings", in Comment b, under Section 675 headed "Existence of Probable Cause", as follows: "Effect of termination in favor of the person against whom the proceedings were brought. As in the case of the initiation of criminal proceedings, a decision by a competent tribunal in favor of the person initiating civil proceedings is conclusive evidence of probable cause. This is so although it is reversed upon appeal and finally terminated in favor of the person against whom the proceedings were brought (see Sec. 667(1) and the Comments thereon)." See also 54 C.J.S. Malicious Prosecution § 24, p. 981. The foregoing rule has been applied to cases of malicious prosecution arising out of bankruptcy proceedings. Goldner-Siegel Corporation v. Kraemer Hosiery Co., 153 Misc. 159, 274 N.Y.S. 681; Koral v. Savory,

Inc., 168 Misc. 615, 5 N.Y.S.2d 270, 271, affirmed 255 App.Div. 856, 7 N.Y.S.2d 995.

■ Suits for malicious prosecution are not favored by the law. 28 Tex.Jur., p. 446. "The reason for the rule not favoring actions for malicious prosecution, in case of civil proceedings, is that a litigant should be entitled to have his rights determined without the risk of being sued and having to respond in damages for seeking to enforce his rights, as free access to courts of civil justice is provided for the administration of the law of the land * * *." 54 C.J.S. Malicious Prosecution, § 3, p. 955.

■ The law question here presented does not appear to have been passed upon by the Courts of Texas, but we feel duty bound to follow the above general rule. And appellant's first point arguing a contrary doctrine with no authority in support, either case book or textual, must be overruled.

■ Point two is likewise overruled. As stated in reply briefs of appellees: "The allegations in Appellant's First Amended Petition show that there is no dispute as to the fact that the letter in question was not privileged, secret or confidential, and that there existed no confidential or fiduciary relationship between appellant and its attorney on the one hand and appellees and their attorney on the other hand, and that appellant owed no duty to appellant to keep secret the contents of such letter, or refrain from furnishing to anyone a copy of such letter."

And though unnecessary to this opinion, we are further inclined to agree with the observation of appellees that "the issue here is not whether 'meddlesome interference' is a cause of action, but is whether allowing someone to read a letter under the circumstances alleged by appellant in his pleadings constitutes 'meddlesome interference'."

Rule 166–A, Summary Judgment, was properly applied to the foregoing record;

Pate v. Stevens, Tex.Civ.App., 257 S.W. 2d 763; Schroeder v. Texas & Pacific Ry. Co., Tex.Civ.App., 243 S.W.2d 261; and the trial court's manner of disposition thereof is in all things affirmed.